[No. 13534.  *En Banc.*  August 25, 1916.]

THE STATE OF WASHINGTON, *on the Relation of George P. Wright, Respondent*, v. THE CITY OF TACOMA *et al.*, *Appellants*, JOHN F. MEADS, AS CONTROLLER OF THE CITY OF TACOMA, *Defendant.*[1]

MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENTS—WATER SYSTEM —COST—LIMITATION—PAYMENT OF CONTRACTOR — EXTRAS — FUNDS— STATUTES. Although, by Rem. & Bal. Code, §§ 8005-8010, a city in submitting the construction of a water system, must apprise the tax payers of the probable cost, the total expense which may be incurred is not limited to the estimated sum of $2,000,000, where the original contracts were let for sums within the estimate and the contractor did extra work, not originally contemplated in building 41 miles of pipe line through a mountainous country, under an ordinance providing that "the estimated cost, as near as may be, is the sum of two million dollars;" that extra work ordered by the council shall be done by the contractor at actual cost and ten per cent added; and that a special warrant fund No. 2 be created for the purpose of defraying additional cost and expense, derived from the gross revenues and earnings of the water system, as long as any obligations are outstanding against said fund, the statute, Id., § 8008, providing that the original bond issue be paid out of the earnings of the system; since two funds were thereby created, the taxpayers were not misled, and the extra work and changes were inevitable and properly anticipated in making provision for the fund No. 2.

APPEAL—REVIEW—OBJECTIONS BELOW—MANDAMUS. The fact that a city denied its liability and raised no objection below to an order directing that warrants for extra work be delivered direct to a contractor in violation of the terms of the contract, will not preclude the city's raising the objection on appeal, where the proceedings were in mandamus to compel the performance of the contract and ordinances, which were in the record.

Appeal from a judgment of the superior court for Pierce county, Chapman, J., entered April 11, 1916, upon findings in favor of the plaintiff, in an action to compel the issuance of special fund warrants in payment for a public improvement, tried to the court. Modified.

[1]Reported in 159 Pac. 765.

*U. E. Harmon* and *Frank M. Carnahan* (*T. L. Stiles*, of counsel), for appellants.

*Fletcher & Evans* and *Sullivan & Christian*, for respondent.

CHADWICK, J.—This case was before the court and opinion rendered in *Wright v. Tacoma*, 87 Wash. 334, 151 Pac. 837, to which reference should be made. Counsel for both sides accept that opinion in so far as it *establishes* the claim of respondent. Beyond that, there is a positive disagreement as to its meaning and legal effect. The case was remanded and a judgment entered as follows:

"Now therefore it is by the court considered, ordered and adjudged that plaintiff George P. Wright do have and recover of and from the defendant city of Tacoma, a municipal corporation, the sum of $97,095.91 with 6% per annum interest thereon from October 9, 1914, until paid, the same to be payable out of any warrants, bonds or revenues created or to be created, or authorized to be created under the provisions of ordinance No. 3982 of defendant city, and out of the gross revenues, earnings and credits of the water system now belonging or which may hereafter belong to said defendant city, together with plaintiff's costs and disbursements taxed in the supreme court, amounting to the sum of $115.55."

After demand upon the city and its officers, and a satisfaction of the judgment as required by § 953 of Rem. & Bal. Code, respondent relator began this action, praying for a writ of mandamus to compel the city officers to issue special water fund warrants, each in the sum of $500, payable out of the gross revenues, earnings, and credits of the water system, and that each warrant be made to draw interest at the rate of 6 per cent per annum, payable semiannually. Or, in the alternative, if such relief could not be granted, that the city, its officers and agents be directed to sell a sufficient amount of warrants or bonds, payable out of the gross revenues, earnings and credits of the water system, to obtain the necessary funds to pay the amount due respondent in cash.

The court made findings and entered a judgment in favor of respondent, directing that warrants be issued direct to respondent in denominations and bearing interest at the rate prayed for.

Briefly stated, the contention of counsel for appellants is that there is no legal obligation on the part of the city to pay the judgment, for the following reasons: (a) By the ordinance, the cost of the water system was limited to the fund to be realized from the sale of bonds and warrants not exceeding the sum of $2,000,000; (b) that the whole of the fund so realized has been paid out upon valid contracts so that none remains to meet the demands of respondent's judgment; (c) that respondent, by the terms of his contract, limited his recovery to the proceeds of the sale of such bonds and warrants and cannot now, under well established principles, compel the payment of his judgment from other sources of revenue, whether such revenues be raised for general or special purposes.

To meet these material contentions, respondent insists that the former opinion is the law of the case and forecloses all inquiry as to the legality of the claim, as well as the sources from which it is to be paid. Counsel for the city insist that the question of exhaustion of the fund was not only not inquired into in our former opinion, but was expressly reserved, upon the objection of respondent, until such future time as he might seek satisfaction of his judgment.

It will thus be seen that the controlling question for us to consider is whether the $2,000,000, to be raised by the sale of the warrants and bonds, was a limitation upon the cost of the water plant. Because counsel charges that the expression in the former opinion of the court:

"The $2,000,000 referred to in § 3 [ordinance] is not a limitation of the amount which the system was to cost, but is only an approximate estimate."

is inapt and inadvertent, and cannot be harmonized with an-

other expression that the contract, being a binding and legal obligation,

"The fact that the fund has been exhausted, if it be a fact, is not a sufficient reason to deny to the contractor a right to have the liability of the city under the contract determined by a judgment of a court of record."

And appreciating counsel's insistence that in *Uhler v. Olympia*, 87 Wash. 1, 151 Pac. 117, 152 Pac. 998, we have settled the law governing this case, we have decided to treat the question as one of original inquiry.

If appellants' theory be sound that the judgment cannot be satisfied if the original fund has been exhausted—and we are not disposed to take issue with it, or the conclusions of counsel if their premise be sound—we are met by the first and controlling question in the case: What is the fund? Obviously, the answer must be found in a construction of the ordinance. Section 3 provides:

"That the estimated cost of said gravity water system, with the lands, waters, water rights, easements, privileges and appurtenances therefor as aforesaid, as near as may be, is the sum of Two Million Dollars." Tacoma Ordinance No. 3,982.

If this were all, the reasoning of the *Uhler* case would be controlling. But it is not all. Seemingly, in anticipation of conditions that might arise in the construction of a water system, including a pipe line approximately forty-one miles long, to be laid, in part, through a country rough and mountainous, the council endeavored to obviate the rule that would hold it to, or within, the estimate, and made further provision. It fixed the possible limit of a bond issue, but provided that such additional costs and expenses as might occur should not go unpaid, but should be paid out of the earnings of the plant. It created not one, but two funds. Section 2 provides:

"That whenever during the progress of the work under any contract, any work or material not prescribed in the plans

and specifications for said work shall be ordered by resolution of the city council, the same shall be done or furnished by the contractor at actual cost and 10 per cent added."

Section 13 provides that there is created and established in the treasury of the city of Tacoma, a fund to be called:

"City of Tacoma Special Water Warrant Fund No. 2, which fund is created and is to be drawn upon for the sole purpose of defraying the cost and expense of the said addition of the said gravity water system as specified and adopted by Sections 1 and 2 of this ordinance, together with such interest as shall accrue from the warrant obligation issued in payment therefor. Whenever the city of Tacoma shall have sold any warrants upon the said city of Tacoma Special Water Warrant Fund No. 2, or shall have contracted with any person or corporation for the construction of said gravity water system, or any part thereof, and agreed to pay therefor with warrants, on said fund, or with money derived from the sale of such warrants, thereafter as long as any obligations are outstanding against said fund, the city treasurer shall set aside into said fund from the gross revenues, earnings and credits derived from the water system now belonging to or which may hereafter belong to said city, the sum of $100,000 each year, if the whole number of warrants authorized to be issued hereunder is the sum of $1,500,000 and the sum of $125,000 each year if the whole number of warrants authorized to be issued hereunder is the sum of $2,000,000."

The work done by respondent, for which judgment was allowed in the former action, was done in addition to the work contemplated under the original plans of the city, and, in large part, to meet changes demanded by the city to make the system possible, feasible, and practicable.

The reason why a city may not proceed under the statute, Rem. & Bal. Code, §§ 8005-8010, without clearly apprising the taxpayer of the probable cost is, as held in the *Uhler* case, to protect the citizen from impositions and careless administrations. The legislature was careful to provide that a city council could not proceed willy nilly. It made the taxpayer a party to the contract. The clear intent of the statute is

that he shall not be misled. But no taxpayer could be misled into the belief that the $2,000,000 fixed as an estimate "as near as may be" in section 3, was a limitation upon the cost of the system. He was clearly apprised of the intent of the council to proceed, with his sanction of course, to build a system for which obligations in the way of general negotiable bonds to the extent of $500,000 and special fund warrants (bonds) payable out of the revenues of the system to the extent of $1,500,000 were authorized, and for any excess of cost, special warrants to be drawn on "City of Tacoma Special Water Warrant Fund No. 2, out of which the cost of the addition to the water system was to be paid," *Wright v. Tacoma, supra.* We were of that opinion when the other opinion was written, and are of that opinion now.

If the ordinance, considered in all of its parts, has not this meaning, the section creating "Special Water Warrant Fund No. 2" has no function to perform, for the statute provides for the payment of the original bond issue out of the earnings of the system. Rem. & Bal. Code, § 8008. There was no such saving provision in the Olympia ordinance. The taxpayer was called upon to reject or approve a plan to purchase an existing plant the cost of which should have been reasonably ascertained. It will be answered that the Olympia ordinance did, in effect, and in fact, make provision for an added cost, and that its procedure being rejected, we cannot consistently hold that obligations in excess of the estimated cost can be issued in this case. The clause of the Olympia ordinance which is relied on is as follows:

"The issuance of bonds as provided for herein is based upon the estimated cost of $90,000 as near as may be, and in the event that a larger sum is necessary to carry out the purposes of this ordinance, the issuance of bonds in the total amount necessary shall be provided for by supplemental ordinance to be enacted after the actual amount of bonds necessary to carry out the purpose of this ordinance is ascertained." Olympia Ordinance No. 1,372.

Construing this section, we said in *Uhler v. Olympia, supra:*

"It will be seen that this section of the ordinance violates the spirit and intent of the act giving the council power to pass an ordinance providing for the submission of such questions.

"The council had fixed, as the estimated sum necessary to purchase the waterworks, $90,000. It could not, therefore, make its own act indefinite by providing, in the event a larger sum became necessary after the condemnation to carry out the purpose intended, that it might provide by supplemental ordinance for the issuance of bonds in the total amount necessary, whatever that sum might be. If the council could do this, it could make out of the statute a mere form and leave the citizen as uninformed as to the probable amount of the bond issue as if no sum had been fixed as an estimate at all. It could fix an estimate at, say $25,000 without reference to probable values, and issue bonds at will and to any amount. In other words, under the authorities cited in our former opinion, holding that the payment and the manner of payment are just as much a part of the plan as the declaration of intent, and under the statute which provides that there shall be reasonable certainty in declaring the amount of the estimate, it follows that the council cannot, by resort to supplemental ordinance, substantially increase the burden as it is fixed by the estimate."

The difference between that case and this is easily apparent. The Olympia ordinance, when taken as a whole, left the whole cost subject to another ordinance which may have been passed by the council, thus destroying the element of reasonable certainty which the statute seems to require. The power to fix the amount to be expended was, in reality, reserved by the council. It gave the voter the form of power but reserved the substance. In the instant case, the ordinance was more skillfully drawn. Extra work and changes made necessary in the course of construction, things inevitable in all building operations, were anticipated, and the cost, if. in excess of the $2,000,000, was provided for by a plan for payment—an essential thing which was entirely omitted in the Olympia ordinance. The one plan was rendered wholly

indefinite, the other was made as definite as the circumstances of the case would permit.

The provision in the Tacoma case for added cost was a wise one. Unlike the undertaking in the Olympia case, which was to acquire by condemnation an existing water plant, the cost of which could be approximated within reasonable bounds and which could be abandoned if a jury fixed a price that the city was unwilling to pay, the plan was to build a water system with the water supply some forty-one miles away and which, from the nature of things, could not well be abandoned although the whole of the estimated sum had been expended before the plant was constructed. As we have said, the difference between the two projects is such that some rational method of anticipating extra cost was the part of wisdom in the one, while a difference between the estimated cost and the verdict of the jury in the other, if material, could be, and in fact should be, approved by the electorate.

It must be borne in mind that the contracts were let for sums within the estimate, and the changes, for the cost of which the judgment in this case was rendered, were ordered by the city authorities under the ordinance. We are not holding that, the estimate being $2,000,000 and the bids aggregating $2,500,000, or any considerable sum in excess of the estimate, the council should proceed under any form of ordinance without another vote of the people.

While it is not now material, we feel it is not out of place to discuss briefly an expression in our former opinion which counsel has called to the aid of their cause:

"The question raised by the ruling upon the demurrer to this affirmative defense is, will the exhaustion of the special fund, out of which the contractor was to be paid under the ordinance and by the terms of his contract, deny him the right to a judgment against the specified fund for the amount which may still be due? It is not claimed that the contract between the city and the respondent was other than a valid one. The contract being a binding and legal obligation, it would seem that, if there was a balance due under

such contract, the contractor would have a right to have
such valid claim established by a judgment against the city,
provided the judgment limited the collection thereof to the
fund referred to in the ordinance and the contract."

The effect of counsel's argument is that our opinion did no
more than to establish the claim, leaving the question as to
the exhaustion of the fund open; that proof of the state of
the fund was denied in the former case, and the fact that the
whole $2,000,000 was expended prior to the time the judg-
ment in this case was rendered being now shown, respondent
cannot recover.  Confusion seems to have crept into the case
by the use of the words "exhaustion of the special fund"
and "the fact that the fund has been exhausted, if it be a
fact, etc."  We did not intend, nor do we think our language,
when considered in the light of our holding, implies, that no
recovery could be had after the $2,000,000 fund was ex-
hausted.  As hereinbefore pointed out, that is only a part of
the fund.  The word "fund," as used in the ordinance, means
the $2,000,000 and such warrants as may be issued under
§ 13, and which, from the nature of the enterprise, cannot
be exhausted so long as the council follows the direction of
the ordinance by creating and maintaining "Special Water
Warrant Fund No. 2."  Our thought was that the special
water warrant fund was a variable fund; that sometimes it
would be greater and sometimes it would be less, or even
exhausted; but even if it were so, a judgment establishing
the claim could not be denied because of the diminished or
depleted state of the fund.  A judgment being rendered or,
as we said, the claim being established, it could "only be col-
lected out of the" Special Water Warrant Fund No. 2 as
funds became available from the earnings of the system.
Our opinion could not be sustained, in reason, if this were
not so.  To enter a judgment that could not be satisfied
would be an idle thing to do.  The fact that we ordered a
judgment to be entered is a sufficient argument that we did
not intend to hold that it could not be eventually satisfied.

Counsel for the city complains that the court has proceeded in violation of the terms of the contract and ordinance in that it has ordered the warrants to be delivered direct to respondent. Counsel for respondent admit that the city might have exercised its option to dispose of the warrants or bonds and pay in cash, but not having done so, and having denied all liability, and not having raised the objection in the court below, that it cannot now be heard to object to the order of the court. Ordinarily there would be merit in the contentions of counsel, but the rights of the parties depend upon the ordinance and the contract. The courts were open to the city to assert what it conceived to be its legal rights and, because it has done so, it cannot be penalized beyond the terms of its contract. Aside from these considerations, it is the privilege of every judgment debtor, in the absence of a contract, to discharge his obligation in money. The creditor must be satisfied with that, and find recoupment for delay in the only penalty the law admits in such cases, that is, interest.

Nor are we disposed to deny appellants the right to be heard because the question was not raised in the court below. This is a mandamus proceeding to compel the performance of a contract, and so long as the contract and the ordinances are in the record, we will look to them for the measure of duty, rather than to the general rules of procedure.

The court below ordered warrants issued in denominations of $500, with interest payable on the first days of April and November of each year. It was so provided in ordinance No. 3982. This was probably an oversight on the part of the court and counsel. By a later ordinance, No. 4520, the city provided that all obligations issued in payment for the work should be issued in denominations of $1,000, with interest payable on the first days of January and July.

Our holding is that respondent is entitled to have its judgment, with interest at six per cent per annum from the date of its rendition, satisfied by the delivery of warrants to

be issued in denominations of $1,000, and the ultimate fraction thereof, each warrant to draw interest at the rate of six per cent per annum, payable semiannually on the first days of January and July in each year, unless the city of Tacoma shall, within sixty days after the remittitur goes down, pay to the respondent the full amount thereof in lawful money. With these modifications, which go to form and not to substance, the judgment is affirmed.

Remanded, with directions to enter a modified judgment. Respondent will have his costs on appeal.

MORRIS, C. J., HOLCOMB, FULLERTON, MAIN, ELLIS, and PARKER, JJ., concur.